UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT
No. 91-1953

HELEN B. BARNES, M.D., ET AL.,

Plaintiffs-Appellees,

versus

MIKE MOORE, Attorney General of the State of
Mississippi and his employees, agents and successors,

Defendants-Appellants.

_____

Appeal from the United States District Court for the
Southern District of Mississippi

_____

(August 17, 1992)

Before REYNALDO G. GARZA, DAVIS, and BARKSDALE, Circuit Judges.

PER CURIAM:

On August 5, following oral argument earlier that day in this appeal from the district court's preliminarily enjoining enforcement of the Mississippi Informed Consent to Abortion Act, we vacated the injunction, stating that we would file an opinion, to include further disposition of this appeal. Pursuant to *Planned Parenthood of Southeastern Pennsylvania v. Casey*, 60 U.S.L.W. 4795 (U.S. June 29, 1992), we hold that the Act is facially constitutional. Accordingly, this case is **REMANDED** to the district court for entry of an order of dismissal.

I.

In March 1991, the Mississippi Legislature enacted the Informed Consent to Abortion Act, Miss. Code Ann. §§ 41-41-31, *et seq.*, effective that July. That May, the plaintiffs (abortion clinics and physicians who perform abortions or provide abortion referral services) filed suit, asserting that the Act is unconstitutional on its face, and seeking, *inter alia*, immediate injunctive relief. Although the Act was to become effective on July 1, the Mississippi Attorney General agreed to suspend enforcement until September 1. After two days of evidentiary hearings on plaintiffs' motion for a preliminary injunction, the district court, on August 30, two days before the Act was to become effective, granted the injunction, "suspending the effective date and enforcement" of the Act. It so ruled because of controlling Supreme Court precedent.

While this appeal from that injunction was pending, the Supreme Court rendered its decision in **Casey** on the facial challenge to the Pennsylvania Abortion Control Act, upholding the informed consent, 24-hour waiting period, parental consent, and reporting and recordkeeping provisions, but striking down the spousal notification provision. The judgment was announced in a joint opinion by Justices O'Connor, Kennedy, and Souter. The parties to this appeal then filed supplemental briefs on the effect of **Casey**.

II.

The Mississippi Act's informed consent and 24-hour waiting period provisions are substantially identical to similar provisions

of the Pennsylvania Act at issue in *Casey*; but, unlike the Pennsylvania Act, Mississippi's does not contain spousal notification (struck down in *Casey*), parental consent, and reporting and recordkeeping provisions. Accordingly, as plaintiffs essentially conceded at oral argument, they cannot now meet the well-established four-part test for obtaining a preliminary injunction, including showing a substantial likelihood of success on the merits.[1] Therefore, we vacated the preliminary injunction. In any event, plaintiffs have raised a host of challenges to the Mississippi Act, in an attempt to distinguish it from the Act upheld in *Casey*, resulting in our either remanding for further proceedings or holding against the facial challenge and remanding for entry of an order of dismissal.

Because the plaintiffs are challenging the facial validity of the Mississippi Act, they must "establish that no set of circumstances exists under which the Act would be valid." *United States v. Salerno*, 481 U.S. 739, 745 (1987); *Casey*, 60 U.S.L.W. at

---

[1]

> The four prerequisites [for the extraordinary relief of preliminary injunction] are as follows: (1) a substantial likelihood that plaintiff will prevail on the merits, (2) a substantial threat that plaintiff will suffer irreparable injury if the injunction is not granted, (3) that the threatened injury to plaintiff outweighs the threatened harm the injunction may do to defendant, and (4) that granting the preliminary injunction will not disserve the public interest.

*Canal Authority v. Callaway*, 489 F.2d 567, 572 (5th Cir. 1974).

4834 (Rehnquist, C.J., dissenting in part).[2]  In light of *Casey*'s holding substantially identical provisions of the Pennsylvania Act facially constitutional, the plaintiffs cannot satisfy this "heavy burden".  *Salerno*, 481 U.S. at 745.

A.

Section 41-41-33 of the Mississippi Act requires the physician to inform the patient of medical risks of abortion "including, when medically accurate, the risks of infection, hemorrhage, danger to subsequent pregnancies and infertility"; the probable gestational age of the fetus; and the "medical risks associated with carrying her child to term".  That section further requires that the patient be informed, by a physician or physician's agent, "[t]hat medical assistance benefits may be available for prenatal care, childbirth and neonatal care"; "[t]hat the father is liable to assist in the support of her child"; that there are available private and public services for pregnancy prevention counseling; and that she has a right to review printed materials provided by the State which describe the stages of fetal development and list agencies that offer alternatives to abortion.  Those printed materials are to be "objective, nonjudgmental, and designed to convey only accurate information", § 41-41-35; and the Act expressly permits the

---

[2]The *Casey* joint opinion may have applied a somewhat different standard in striking down the spousal notification provision of the Pennsylvania Act, not in issue here.  60 U.S.L.W. at 4812; *see also id*. at 4834 & n.2 (Rehnquist, C.J., dissenting in part). Nevertheless, we do not interpret *Casey* as having overruled, *sub silentio*, longstanding Supreme Court precedent governing challenges to the facial constitutionality of statutes.

physician or agent to comment, or refrain from comment, on them. § 41-41-33(b)(iv).

The Mississippi Act requires a 24-hour waiting period between the disclosure of information and performance of an abortion, except for a "medical emergency". § 41-41-33. And, a physician convicted of "purposefully, knowingly or recklessly" performing an abortion in violation of the Act is guilty of a misdemeanor, punishable by fine or imprisonment for up to six months. § 41-41-39.

B.

1.

As stated, plaintiffs' post-*Casey* facial challenge primarily keys on specific differences between the Mississippi and Pennsylvania Acts. For example, the Pennsylvania Act contains an exception to the penalty for violating the informed consent requirements if the physician "can demonstrate, by a preponderance of the evidence, that he or she reasonably believed that furnishing the information would have resulted in a severely adverse effect on the physical or mental health of the patient". 18 Pa. Cons. Stat. Ann. § 3205 (Supp. 1992). This exception is not found in the Mississippi Act. As another example, the Acts differ in some respects in defining "abortion" and "medical emergency".[3] We do

---

[3]The Mississippi Act defines "abortion" as

> the use or prescription of any instrument, medicine, drug or any other substance or device to terminate the pregnancy of a woman known to be pregnant with an intention other than to increase the probability of a live birth, to preserve the

not find merit in any of the facial challenges, including to the definition of a "medical emergency".

In defining that term, the Mississippi Act uses the phrase "grave peril of immediate and irreversible loss of major bodily function", § 41-41-31(b); Pennsylvania, "serious risk of

> life or health of the child after live birth or to remove a dead fetus.

Miss. Code Ann. § 41-41-31(a) (Supp. 1991).  The Pennsylvania Act defines it as follows:

> The use of any means to terminate the clinically diagnosable pregnancy of a woman with knowledge that the termination by those means will, with reasonable likelihood, cause the death of the unborn child except that, for the purposes of this chapter, abortion shall not mean the use of an intrauterine device or birth control pill to inhibit or prevent ovulation, fertilization or the implantation of a fertilized ovum within the uterus.

18 Pa. Cons. Stat. Ann. § 3203 (1983).

The Mississippi Act defines "medical emergency" as

> that condition which, on the basis of the physician's best clinical judgment, so complicates a pregnancy as to necessitate an immediate abortion to avert the death of the mother or for which a twenty-four-hour delay will create grave peril of immediate and irreversible loss of major bodily function.

Miss. Code Ann. § 41-41-31(b) (Supp. 1991).  The Pennsylvania Act defines it as follows:

> That condition which, on the basis of the physician's good faith clinical judgment, so complicates the medical condition of a pregnant woman as to necessitate the immediate abortion of her pregnancy to avert her death or for which a delay will create serious risk of substantial and irreversible impairment of major bodily function.

18 Pa. Cons. Stat. Ann. § 3203 (Supp. 1992).

substantial and irreversible impairment of major bodily function", § 3203. Nevertheless, the Mississippi Act allows physicians to rely on their "best clinical judgment", § 41-41-31(b); and they are subject to criminal penalties only if they "purposefully, knowingly, or recklessly" violate the Act, § 41-41-39. We conclude, as the Third Circuit did in *Casey*, that the Mississippi Legislature's intent in drafting that provision was to assure that compliance with the Act would not pose a significant threat to the life or health of women seeking abortions. *See Casey*, 60 U.S.L.W. at 4808.

## 2.

Plaintiffs contend, however, that this case should be remanded for further evidentiary proceedings, so that they can attempt to prove that, on its face, the Mississippi Act poses an "undue burden" on women seeking abortions in Mississippi, even though the Supreme Court has held that substantially identical requirements do not constitute an undue burden on women seeking abortions in Pennsylvania.[4] They correctly note that the authors of the *Casey*

---

[4]The *Casey* joint opinion defined an "undue burden" as follows:

> A finding of an undue burden is a shorthand for the conclusion that a state regulation has the purpose or effect of placing a substantial obstacle in the path of a woman seeking an abortion of a nonviable fetus. A statute with this purpose is invalid because the means chosen by the State to further the interest in potential life must be calculated to inform the woman's free choice, not hinder it. And a statute which, while furthering the interest in potential life or some other valid state interest, has the effect of placing a substantial obstacle in the path of a woman's choice cannot be considered a permissible means of serving its

joint opinion made repeated references to the evidence in the record and the findings of fact by the district court in Pennsylvania. *See, e.g.*, 60 U.S.L.W. at 4809-10. However, in clarifying what they meant by an "undue burden", the authors of the joint opinion stated that they were "set[ting] forth a standard of general application". ***Id***. at 4807. Applying that standard, we conclude that the differences between the Mississippi and Pennsylvania Acts are not sufficient to render the former unconstitutional on its face.[5] Further evidentiary proceedings would not affect that conclusion.

### III.

We earlier **VACATED** the preliminary injunction. For the foregoing reasons, we **REMAND** this case to the district court for entry of an order of dismissal.

---

legitimate ends.

60 U.S.L.W. at 4807.

[5]In their post-***Casey*** supplemental brief, plaintiffs reduce their argument to the aphorism "Mississippi ain't Pennsylvania", stating, "The record in this case proves what all know empirically: Mississippi ain't Pennsylvania." This speaks volumes about the invalidity of their challenge to the Mississippi Act on its face; in fact, no more really need be said.