RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 21a0093p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

BRISTOL REGIONAL WOMEN'S CENTER, P.C.; MEMPHIS CENTER FOR REPRODUCTIVE HEALTH, on behalf of itself and its patients, KNOXVILLE CENTER FOR REPRODUCTIVE HEALTH; PLANNED PARENTHOOD OF TENNESSEE AND NORTH MISSISSIPPI, formerly known as Planned Parenthood of Middle and East Tennessee, and DR. KIMBERLY LOONEY,

⎤
⎟
⎟
⎟
⎟
⎟
⎬   No. 20-6267
⎟
⎟
⎟
⎟
⎟
⎦

*Plaintiffs-Appellees*,

*v.*

HERBERT H. SLATERY, III, Attorney General of Tennessee, GLENN R. FUNK, District Attorney General of Nashville, Tennessee, AMY P. WEIRICH, District Attorney General of Shelby County, Tennessee, BARRY P. STAUBUS, District Attorney General of Sullivan County, Tennessee, CHARME P. ALLEN, LISA PIERCEY, Commissioner of the Tennessee Department of Health, and W. REEVES JOHNSON, JR., M.D., President of the Tennessee Board of Medical Examiners, in their official capacities,

*Defendants-Appellants*.

_____

On Motion to Stay and Motion for Expedited Consideration.

United States District Court for the Middle District of Tennessee at Nashville;
No. 3:15-cv-00705—Bernard A. Friedman, District Judge.

Decided and Filed:  April 23, 2021

Before:  COLE, Chief Judge; MOORE, CLAY, GIBBONS, SUTTON, GRIFFIN, KETHLEDGE, WHITE, STRANCH, DONALD, THAPAR, BUSH, LARSEN, NALBANDIAN, READLER, and MURPHY, Circuit Judges.

———————————

**COUNSEL**

**ON MOTIONS AND REPLY:** Sarah K. Campbell, Mark Alexander Carver, OFFICE OF THE TENNESSEE ATTORNEY GENERAL, Nashville, Tennessee, for Appellants. **ON RESPONSE:** Autumn Katz, Michelle Moriarty, Rabia Muqaddam, CENTER FOR REPRODUCTIVE RIGHTS, New York, New York, Maithreyi Ratakonda, PLANNED PARENTHOOD FEDERATION OF AMERICA, New York, New York, Scott Tift, BARRETT JOHNSTON MARTIN & GARRISON, LLC, Nashville, Tennessee, Michael J. Dell, Jason M. Moff, KRAMER LEVIN NAFTALIS & FRANKEL LLP, New York, New York for Appellees.

The En Banc Court of the Sixth Circuit Court of Appeals issued an order. MOORE, J. (pg. 3), in which CLAY, WHITE, STRANCH, and DONALD, JJ., joined, and GIBBONS, J. (pp. 4–6), delivered separate dissenting opinions.

———————————

**ORDER**

———————————

Appellants have filed a motion to stay the district court's judgment and injunction pending appeal. Appellants have also filed a motion for expedited consideration of the motion to stay. Appellees oppose both motions. A majority of judges of this court having voted in favor of the motions,

It is ORDERED that the motion for expedited consideration is GRANTED.

It is further ORDERED that the motion to stay the district court's judgment and injunction pending appeal is GRANTED, and that our prior opinion to the contrary, 988 F.3d 329, is VACATED.

_____

**DISSENT**

_____

KAREN NELSON MOORE, Circuit Judge, dissenting.   I vote to deny Appellants' motion for a stay pending appeal for the reasons given by the panel in *Bristol Regional Women's Center, P.C. v. Slatery*, 988 F.3d 329 (6th Cir. 2021), denying a stay pending appeal.

———————————

**DISSENT**

———————————

JULIA SMITH GIBBONS, Circuit Judge, dissenting.  I was not in favor of granting initial hearing en banc in this case.  I believe that doing so was unnecessary and damaged our traditional system of panel review.  I recognize that a majority of my colleagues disagree with my views, however, and I will not belabor this point.

Instead, I am writing separately to emphasize that I find the question of whether to grant the State's motion for a stay pending appeal to be a close one.  As is often the case, whether to grant the stay turns primarily on whether the State has made "a strong showing that [it] is likely to succeed on the merits."  *Nken v. Holder*, 556 U.S. 418, 434 (2009); *Mich. State A. Philip Randolph Inst. v. Johnson*, 749 F. App'x 342, 344 (6th Cir. 2018) ("The likelihood of success is perhaps the most important factor."); *see also Frank v. Walker*, 769 F.3d 494, 495–96 (7th Cir. 2014).  Although there is a possibility—perhaps even a strong possibility—that the State will eventually convince me that the district court erred, it has not currently persuaded me that such a result is "likely."  *See Nken*, 556 U.S. at 434 (holding that a "possibility" of success on the merits is never sufficient).

As an initial matter, *Casey* does not say that "waiting periods are constitutional," as both Judge Thapar's panel dissent and the State claim.  *Bristol Reg'l Women's Health Ctr., P.C. v. Slatery*, 988 F.3d 329, 344 (6th Cir. 2021) (Thapar, J., dissenting); CA6 R.76, Mot. for Recons., at 1.  The *Casey* plurality emphasized that its decision was based on the sparse factual record before it.  *See Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 887 (1992) (asserting that the Court's decision was based "on the record before us"); *see also Planned Parenthood of Se. Pa. v. Casey*, 510 U.S. 1309, 1310 (1994) (Souter, J., in chambers) (interpreting *Casey* as leaving litigants "free to challenge similar [waiting period] restrictions in other jurisdictions").  It defies precedent to summarily conclude that all waiting periods are constitutional, no matter the circumstances.

The State also intimates that the existence of similar waiting periods in fourteen other states should lead us to find that Tennessee's waiting period is constitutional. *See* CA6 R.39, Pet. for Initial Hr'g En Banc, at 10 n.2 (listing statutes). Certainly, if each of those laws had been tested and upheld in authoritative court decisions, those decisions would signal that waiting periods are constitutional in all but the narrowest circumstances. But, by my count, federal courts of appeals have only decided that four of those waiting periods do not infringe upon the right to an abortion, and the courts' rationales vary. *See Cincinnati Women's Servs. v. Taft*, 468 F.3d 361, 373–74 (6th Cir. 2006) (upholding Ohio's waiting period because plaintiffs could not satisfy the "large-fraction test"); *A Woman's Choice-E. Side Women's Clinic v. Newsom*, 305 F.3d 684, 691 (7th Cir. 2002) (upholding Indiana's waiting period because the evidence did not show that the law unduly burdened the right to an abortion); *Karlin v. Foust*, 188 F.3d 446, 485–86 (7th Cir. 1999) (upholding Wisconsin's waiting period because the evidence plaintiffs presented to distinguish their case from *Casey* was not convincing); *Barnes v. Moore*, 970 F.2d 12, 14 (5th Cir. 1992) (upholding Mississippi's waiting period in the absence of a developed factual record because the law was functionally identical to *Casey*). Given *Casey*'s directive to consider the specific factual record in each case, the existence of similar laws elsewhere—many of which are untested in the federal appellate courts—does not convince me that Tennessee's law is constitutional.

Because this case cannot be easily resolved by the mere presence of *Casey* or other states' similar waiting periods, our task is to determine whether, "in a large fraction of the cases in which [Tennessee's law] is relevant, it will operate as a substantial obstacle to a woman's choice to undergo an abortion." *Casey*, 505 U.S. at 895. That is no easy feat. On the one hand, as the State argues, many of the burdens in this case mirror the burdens in *Casey*. On the other, some of the district court's factual findings—such as the specific length of the delays caused by the law, the impact of those delays on the ability of plaintiffs' patients to obtain a medication abortion (a safer and substantially less invasive procedure than a surgical abortion), and the effect of those delays on the emotional and psychological well-being of plaintiffs' patients—differentiate this case from *Casey*. The crucial question, therefore, is whether these differences are so significant that they require a different result than the one reached in *Casey*. *See id.*

I forthrightly admit that I do not yet know the answer to this question.  To answer it will take time.  I will need to pore through the extensive record, analyze the merits briefs, and hear the parties' arguments.  Ultimately, however, at this stage the State bears the burden of convincing me that it is likely to succeed on the merits.  *See Nken*, 556 U.S. at 433–34.  It has not done so, and I would deny the State's motion for a stay.[1]

I respectfully dissent.

ENTERED BY ORDER OF THE COURT

Deborah S. Hunt, Clerk

---

[1]The fact that the State has not made a strong showing that it is likely to succeed on the merits influences my weighing of the other stay factors.  *See Nken*, 556 U.S. at 434 (listing the stay factors); *see also Commonwealth v. Beshear*, 981 F.3d 505, 508 (6th Cir. 2020) (order) (per curiam) (observing that likelihood of success on the merits is often dispositive).  For example, the irreparable harm that the State asserts it will face in the absence of a stay—the inability to enforce its duly-enacted laws—is most compelling only if the State's law is likely constitutional.  Likewise, if there is not a strong likelihood that the waiting period is constitutional, plaintiffs and their patients may suffer serious harms if the district court's decision is stayed.  Thus, although I took all of the stay factors into account while reaching this result, at bottom, my decision is largely driven by my resolution of the first factor.